112 F.3d 98
 37 Fed.R.Serv.3d 1088
 Gary A. PODELL, Plaintiff-Appellant,
v.
CITICORP DINERS CLUB, INC., Citicorp Credit Services, Inc.,
Nissan Motor Acceptance Corporation, Salon
Furniture Co., and Equifax, Inc., Defendants,
TRW Inc. and Trans Union Corporation, Defendants-Appellees.
 No. 314, Docket 96-7246.
 United States Court of Appeals,
Second Circuit.
 Argued Sept. 26, 1996.
Decided May 5, 1997.
 
 Gabriel J. Fischbarg, New York City, for Plaintiff-Appellant.
 Mark E. Kogan, Marion, Satzberg, Trichon & Kogan, P.C., Philadelphia, PA, for Defendant-Appellee Trans Union Corporation.
 Heidi A. Wendel, Jones, Day, Reavis & Pogue, New York City, for Defendant-Appellee TRW Inc.
 Before: WALKER, McLAUGHLIN, and JACOBS, Circuit Judges.
 JACOBS, Circuit Judge:
 
 
 1
 Plaintiff Gary A. Podell seeks damages under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681-1681u, and under New York law, for harms resulting from inaccurate reports bearing on his creditworthiness. Of the seven defendants originally named in the complaint, the only two remaining are the credit reporting agencies TRW Inc. ("TRW") and Trans Union Corporation ("Trans Union").[1] Podell claims that TRW and Trans Union failed to conduct proper investigations of disputed credit entries, prevented him from explaining in his credit reports that he contested certain accounts, and continued to list past-due accounts on his reports even after being notified that the underlying debt entries were false.
 
 
 2
 The United States District Court for the Southern District of New York (Haight, J.) granted summary judgment in favor of TRW and Trans Union, holding that: (1) Podell failed to raise a genuine issue of material fact concerning the defendants' compliance with FCRA, and that as a result he also could not prove any of his state law claims; and (2) in the alternative, no damages were recoverable under FCRA, because Podell's alleged losses arose solely from the use of his credit report for business or commercial (as opposed to consumer) purposes. See Podell v. Citicorp Diners Club, Inc., 914 F.Supp. 1025, 1035-37 (S.D.N.Y.1996).
 
 
 3
 We affirm the grant of summary judgment dismissing all of Podell's claims under the district court's first holding, and do not reach the district court's alternative holding.
 
 BACKGROUND
 
 4
 Credit reporting agencies such as TRW and Trans Union gather credit information about consumers from, inter alia, subscribing commercial, retail, and financial entities, and distribute that information in the form of credit reports to other subscriber customers. See generally id. at 1027. Without Podell's knowledge or authorization, a person or persons unknown secured credit in Podell's name from various retail and financial creditors, and made purchases on that illegally obtained credit without paying the resulting debts. Complaint p 8. The problem came to light in late June 1991, when Podell became aware that the debts had been reported to TRW; in April 1992, he discovered that the debts had been reported to Trans Union as well. Id. pp 8, 9, 13.
 
 
 5
 Podell contends that TRW and Trans Union failed to take appropriate corrective action when they were advised of the inaccuracy of the credit reports, and that as a result he lost important business opportunities, was prevented from making purchases, and suffered physical and emotional distress. Id. pp 18-19. Podell alleges willful noncompliance with FCRA pursuant to 15 U.S.C. § 1681n; negligent noncompliance with FCRA pursuant to 15 U.S.C. § 1681o; and six state law causes of action: (i) violation of section 349 of the New York General Business Law; (ii) negligent infliction of emotional distress; (iii) intentional infliction of emotional distress; (iv) prima facie tort; (v) common law negligence; and (vi) defamation. Complaint pp 20-50. Podell seeks more than $50,000 in actual damages; $500,000 in punitive damages; costs and attorneys fees; and an order mandating removal of "all current inaccurate information" from his credit reports. See id.
 
 
 6
 TRW. On June 27, 1991, Podell learned that TRW was reporting an unpaid debt owed by him to Salon Furniture Company ("Salon").[2] Podell wrote to TRW on July 2, 1991, requesting that the disputed account be cleared up as quickly as possible. TRW failed to remove the inaccurate Salon entry from his credit profile and continued to note the account in its responses to third party inquiries until March 1994. Complaint p 11.
 
 
 7
 Trans Union. In or about April 1992, Podell learned that Trans Union was reporting debts owed by him to Salon as well as to Citicorp Diners Club, Inc. ("Diners Club"). Soon thereafter, Podell notified Salon and Diners Club "that he was not the individual who accumulated the alleged debt[s] respectively owed to [them]." Id. pp 13, 14, 16. Podell alleges, upon information and belief, that Salon and Diners Club subsequently notified Trans Union to remove the false reports from his credit file. Id. pp 15, 16. But, according to Podell, Trans Union continued to report the non-existent debts until after he sent a letter to Trans Union, dated December 3, 1993, requesting that Trans Union investigate and remove the disputed debts. Podell, 914 F.Supp. at 1029-30.
 
 DISCUSSION
 
 8
 This Court reviews a grant of summary judgment under the same principles that guide the district court: "[w]e examine the record de novo, and we are required to view the evidence in the light most favorable to the party opposing summary judgment." Rodriguez v. City of New York, 72 F.3d 1051, 1061 (2d Cir.1995). Under this standard, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The litigant opposing summary judgment " 'may not rest upon mere conclusory allegations or denials,' " but must bring forward "some affirmative indication that his version of relevant events is not fanciful." Quinn v. Syracuse Model Neighborhood Corp., 613 F.2d 438, 445 (2d Cir.1980) (quoting SEC v. Research Automation Corp., 585 F.2d 31, 33 (2d Cir.1978)).
 
 
 9
 Podell alleges that TRW violated FCRA § 1681i by failing to conduct a proper investigation of accounts that he disputed in his credit report, and by failing to give him the opportunity to place in his report a statement showing that he disputed the debts. Podell alleges that Trans Union violated FCRA § 1681e by failing to investigate and correct his credit report when Trans Union received notice from his creditors that the debt entries were false, and by waiting until it received notice from him personally before taking corrective action. We agree with the district court that there is no genuine issue of material fact that bars entry of summary judgment in the defendants' favor.
 
 A. The Claim Against TRW
 
 10
 Podell contends that TRW violated § 1681i by failing to follow proper procedures in investigating the supposed indebtedness to Salon. Section 1681i(a) provides in relevant part that when a consumer disputes the completeness or accuracy of an item on his credit report, and "directly convey[s]" that dispute to the credit reporting agency, the agency "shall within a reasonable period of time reinvestigate and record the current status of that information," and, if the "information is found to be inaccurate or can no longer be verified, ... promptly delete such information." 15 U.S.C. § 1681i(a). The credit reporting agency's "reinvestigation" typically entails sending a Consumer Dispute Verification form ("CDV") to subscribers (usually creditors) that have reported a disputed account. As the district court explained, "[t]he CDV asks subscribers to check whether the information they have about a consumer matches the information on TRW's credit report. If a subscriber fails to respond to a CDV or indicates that TRW's account information is incorrect, TRW deletes the disputed information." Podell, 914 F.Supp. at 1028. If reinvestigation does not resolve an account dispute, consumers may file with their credit report "a brief statement setting forth the nature of the dispute," 15 U.S.C. § 1681i(b), which must be included "in any subsequent consumer report containing the information in question" along with a notation that the matter is disputed by the consumer. 15 U.S.C. § 1681i(c).
 
 
 11
 After reinvestigating a disputed account, TRW sends to the consumer who filed the dispute an updated credit report that includes notice of the consumer's right to file the "brief statement" of dispute. Podell, 914 F.Supp. at 1028. The updated report serves as a confirmation of the reinvestigation process: if reinvestigation discloses an inaccuracy, the report reflects that the inaccurate entry has been deleted; if reinvestigation confirms that the debt is valid, the updated report retains the entry, but in addition advises the consumer of his right to file the statement pursuant to §§ 1681i(b) and (c). Id.
 
 
 12
 Podell "categorically denies that he ever received a [written] confirmation of TRW's reinvestigation" of the Salon account, "which TRW was required to provide under the FCRA (15 U.S.C. § 1681i)"; and he alleges that "TRW failed to give [him] the right to have TRW include in his credit file 'a brief statement setting forth the nature of the dispute' pursuant to 15 U.S.C. § [§ ] 1681i(b) and (c)." Appellant's Brief at 7.[3] The nub of Podell's argument is that because he never received an updated credit report from TRW confirming the validity of the Salon debt, he never received notice of--and never could exercise--his statutory right to place a statement in his credit file explaining (to his potential creditors) that he disputed the Salon debt and setting forth his reasons for doing so.[4]
 
 
 13
 The district court found, on the evidence before it, that Podell failed to carry his burden under § 1681i of proving that TRW "acted negligently," and therefore that no genuine issue existed for trial. Podell, 914 F.Supp. at 1032, 1035. In moving for summary judgment, TRW undertook to demonstrate its compliance with FCRA by presenting the district court with microfiche records and an affidavit from the employee who handled Podell's account; this evidence showed that TRW received Podell's July 2, 1991 letter (disputing the Salon account) on July 11, 1991, and "reinvestigated" the account by sending a CDV to Salon (that same day) stating that Podell disclaimed responsibility for the debt. Id. at 1028. But Salon responded that the account was accurately reported and properly attributed to Podell. Id. On July 25, 1991, a note was placed in Podell's file reflecting the results of the reinvestigation and confirming the validity of the Salon debt. Id. Finally, TRW's records show that an updated credit report confirming TRW's reinvestigation of the Salon account was mailed to Podell on August 13, 1991. Id. That report to Podell contained the notice (described above) alerting Podell to his right to "file a brief statement explaining why the information [regarding the Salon debt] is not accurate." Id.
 
 
 14
 After Podell filed this action in February 1994, TRW sent another CDV to Salon, dated March 21, 1994, in a further effort to ascertain the validity of the account. Id. at 1029. TRW removed the account from Podell's file on March 22, 1994, pending receipt of the CDV from Salon. Id. This time, the returned CDV indicated that the account was not on Salon's system, and TRW has thereafter excluded the entry from Podell's report. Id.
 
 
 15
 The district court ruled that TRW's conduct amounted to compliance as a matter of law with FCRA's reinvestigation procedures, and that TRW was therefore entitled to summary judgment unless Podell could "point to other evidence giving rise to a genuine issue as to a material fact." Id. at 1032 (citing Boothe v. TRW Credit Data, 768 F.Supp. 434, 438 (S.D.N.Y.1991)).
 
 
 16
 In opposition, Podell "categorically dispute[d] that TRW ever sent him a confirmation of the investigation of [his] disputed entries," id. at 1033 (citation omitted), and argued that he was thus deprived of his statutory right to place a statement of dispute in his file. Podell grounds his allegation that the confirmation was never sent on his assertion that he never received it. But in his deposition, Podell made several fatal admissions to the contrary in response to questioning by counsel for TRW:
 
 
 17
 Q: [Do] [y]ou believe that you were not sent [a written confirmation]?
 
 
 18
 A: No, there might have been a second TRW [report]. What's the difference, you left the bad marks on there.... It's possible that I--maybe I got a second one.
 
 
 19
 Q: A second what?
 
 
 20
 A: Maybe another TRW [report] was sent after I complained. I followed the procedure, they tell you to circle the things that are wrong and so forth.
 
 
 21
 Q: So you think you may have gotten a response to that letter [that you wrote to TRW]? ...
 
 
 22
 A: I don't think I ever got a response addressing the problem. Maybe like a second report was sent, that was it....
 
 
 23
 Id. Asked whether he "hear[d] back from TRW" after sending his July 2, 1991 letter disputing the Salon account, Podell responded: "I may have gotten another report which was equally as bad...." Id. The district court assessed these statements as follows:
 
 
 24
 Far from constituting a "categorical" denial that he ever received a confirmation credit report from TRW, [Podell's] deposition testimony reflects the possibility, if not the likelihood, that he did receive such a communication. The grievance [Podell] voiced at his deposition was not that TRW did not respond, but that he regarded the response as inadequate.
 
 
 25
 Id. at 1033-34.
 
 
 26
 After his deposition, when reviewing the transcript for signature pursuant to Rule 30(e) of the Federal Rules of Civil Procedure, Podell drew lines through the damaging responses, and explained his doing so by annotations in the transcript: "Speculation is improper. I did not receive a response to my July 2, 1991 letter to TRW"; and at one point he noted: "I did not receive anything." Id. at 1034. The district court observed that Podell thus "undertook to change his deposition testimony on a material matter," that his "reasons for changing his testimony are unconvincing in the extreme," and that his "subsequent positive assertions that he did not receive a response from TRW cannot be squared with his deposition testimony." Id.
 
 
 27
 The district court properly considered "whether the totality of the evidence ... gives rise to a genuine issue of fact as to whether TRW sent [Podell] the [Salon] confirmation and updated report," keeping in mind that the precise question "is not whether [Podell] received [the confirmation letter], but whether TRW sent it." Id. (emphasis added). The court found that "the only evidence favoring [Podell on that issue] lies in the material changes that he made to his deposition," and therefore concluded that "the evidence on the issue of whether TRW sent to [Podell] a notification of the result of its investigation is so one-sided that TRW must prevail as a matter of law." Id. at 1034, 1035 (emphasis added).
 
 
 28
 Podell contends, however, that Rule 30(e) "expressly allows the final changes to a deposition transcript to become the actual record," and he argues that the district court erred by relying on his original answers--as opposed to his amended ones--in granting summary judgment.
 
 
 29
 Rule 30(e) allows deponents to make "changes in form or substance" to their testimony and to "append any changes [that are] made" to the filed transcript. Fed.R.Civ.P. 30(e). A deponent invoking this privilege must "sign a statement reciting such changes and the reasons given ... for making them," id., but "[t]he language of the Rule places no limitations on the type of changes that may be made[,] ... nor does the Rule require a judge to examine the sufficiency, reasonableness, or legitimacy of the reasons for the changes"--even if those reasons "are unconvincing." Lugtig v. Thomas, 89 F.R.D. 639, 641 (N.D.Ill.1981) (citations omitted).
 
 
 30
 At the same time, when a party amends his testimony under Rule 30(e), "[t]he original answer to the deposition questions will remain part of the record and can be read at the trial." Id. (citing, inter alia, Usiak v. New York Tank Barge Co., 299 F.2d 808 (2d Cir.1962)). "Nothing in the language of Rule 30(e) requires or implies that the original answers are to be stricken when changes are made." Id. at 641-642. This Court has recognized that because "[a]ny out-of-court statement by a party is an admission," a deponent's "original answer should [be] admitted [into evidence]" even when he amends his deposition testimony--with the deponent "[o]f course ... free to introduce the amended answer and explain the reasons for the change." Usiak, 299 F.2d at 810.
 
 
 31
 The district court was therefore on firm ground in holding that Podell was "not entitled to have his altered answers take the place of the original ones," and that his "changed answers bec[a]me [simply a] part of the record generated during discovery." Podell, 914 F.Supp. at 1034.
 
 
 32
 Without considering whether Podell's unequivocal denial of receipt would have created an issue of material fact as to whether the confirmation was sent, we think it is sufficient to support summary judgment here that: (a) TRW has advanced evidence of the sending; and (b) Podell has admitted under oath the probable receipt. We agree with the district court that Podell's effort to retrieve the situation by scratching out and recanting his original testimony does not weigh enough in the balance to create an issue of fact for a jury.
 
 
 33
 Because Podell has failed to demonstrate a genuine material question regarding TRW's compliance with the reinvestigation procedures of FCRA, we affirm the grant of summary judgment to TRW on Podell's claim for negligent noncompliance with FCRA. Podell's claim for willful noncompliance with FCRA fails a fortiori.
 
 B. The Claim Against Trans Union
 
 34
 Podell asserts that Trans Union failed to remove the Salon and Diners Club entries from his credit report even after those creditors notified Trans Union that the accounts were inaccurate; and he argues that Trans Union thereby failed to exercise the reasonable care required by FCRA § 1681e: "Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).
 
 
 35
 In the district court, a key dispute was whether Trans Union actually received notice from Salon and Diners Club. Podell testified in deposition that on April 18, 1992, he watched a Salon employee send a fax to Trans Union requesting that Salon's adverse credit report on Podell be expunged, Podell, 914 F.Supp. at 1029, and Podell produced a copy of the fax in the district court.[5] This question need not trouble us, however, because Trans Union has accepted for purposes of this appeal that the Salon fax was sent, as acknowledged by counsel at oral argument. Moreover, the district court adopted an analysis that largely obviates the fax issue: subsequent to the fax, Salon and Diners Club continued to report that he was indebted to them, and Trans Union's records picked up and reflected the new reports. For example, Trans Union showed that its updates from Salon continued to reflect Podell's indebtedness in December 1993 and January 1994. Id. at 1030. Podell does not dispute that Trans Union received such notices.
 
 
 36
 On appeal, Trans Union urges a rationale for affirmance that avoids any possible dispute over the facts (genuine and material, or otherwise). Trans Union argues that credit reporting agencies have no duty under FCRA to reinvestigate disputed accounts based on communications from creditors, because the statutory duty is triggered only by direct requests from consumers, and that therefore no claim could have arisen here until Podell himself communicated with Trans Union to dispute his credit record. Thus, Trans Union--which did promptly investigate and correct its records after receiving notice directly from Podell--argues that the district court "correctly held that [Trans Union] was entitled, as a matter of law, to report the information [from Podell's creditors regarding his indebtedness] 'at least until it heard from [Podell] directly.' " Appellee Trans Union's Brief at 4 (quoting Podell, 914 F.Supp. at 1035). It is uncontested that the first time Podell personally contacted Trans Union was by letter dated December 3, 1993, stating that the Salon and Diners Club accounts were inaccurate and demanding that they be deleted from his credit report. Podell, 914 F.Supp. at 1030. On January 10, 1994, the letter came to the desk of a Trans Union employee responsible for such consumer complaints, who reinvestigated the accounts by sending CDVs to both Salon and Diners Club, and who ultimately removed both accounts from Podell's report on the basis of the responses (or nonresponses) to the CDVs. Id. Trans Union sent Podell a corrected copy of his credit report in early February 1994, indicating that all the disputed items had been deleted. Podell filed this action on February 8, 1994. Id.
 
 
 37
 Podell contends that Trans Union's statutory obligations do not depend on who gives notice of an incorrect credit entry, and that Trans Union's failure to act after being notified of the errors by his creditors violated Trans Union's duty under FCRA § 1681e(b) to "follow reasonable procedures to assure maximum possible accuracy of the information" about him. Podell urges that where a credit reporting agency actually does receive notice of an error in an account from the creditor that supplied the account entry, a duty arises under FCRA § 1681e to use "reasonable procedures to assure maximum possible accuracy" of that credit entry.
 
 
 38
 The facts of this case do not require us to decide whether, as a matter of law, a credit reporting agency that organizes its protections for consumers so as to comply with the reinvestigation procedures mandated by FCRA § 1681i (and adheres to those procedures) necessarily acts "reasonably" within the meaning of FCRA § 1681e. That is because Trans Union received further confirmation from Salon and Diners Club--at or after the time that Podell claims correct information about his credit was sent--reaffirming the original erroneous entries.
 
 
 39
 As to Salon: Trans Union concedes for present purposes that it received a notice from Salon absolving Podell; but the record also reflects, as the district court found, that subsequent updates from Salon to Trans Union repeated the original and erroneous credit information. See Podell, 914 F.Supp. at 1035. As to Diners Club: Podell alleges that Trans Union also received notice from Diners Club that it was owed no money by Podell; but even if such notice was actually sent (which is not proven by the unsigned letter in the record purportedly from Diners Club to Trans Union) and was received (which Trans Union denies), Podell's counsel conceded at oral argument that Trans Union received a tape from Diners Club--again, at or after the time that the correct information allegedly was sent--which continued to report the adverse and erroneous information.
 
 
 40
 On this record, we conclude that Trans Union did "follow reasonable procedures to assure maximum possible accuracy" of Podell's credit file, even though it continued to report Podell's indebtedness after being advised by his creditors that this was in error, because Trans Union received subsequent or simultaneous reports from those same creditors reaffirming the existence of the debts. In this case, the updates from Salon and Diners Club were the functional equivalent of reinvestigations that confirmed (albeit erroneously) that Podell was in default to his creditors.
 
 
 41
 We therefore agree with the district court that, in these circumstances, Trans Union did not breach its duties under FCRA by relying on the updates it received from Salon and Diners Club, and that "Trans Union was entitled to report [Podell's indebtedness], at least until it heard from [him] directly." Podell, 914 F.Supp. at 1035.
 
 CONCLUSION
 
 42
 For the reasons stated, we affirm the grant of summary judgment in favor of both defendants as to Podell's claims under FCRA. In addition, for the reasons stated in the district court's opinion, 914 F.Supp. at 1035-36 & n. 3, we affirm the grant of summary judgment to TRW and Trans Union on Podell's claims for violation of section 349 of the New York General Business Law; negligent infliction of emotional distress; intentional infliction of emotional distress; prima facie tort; common law negligence; and defamation.
 
 
 
 [1]
 The five original creditor-defendants were Citicorp Diners Club, Inc. ("Diners Club"), Citicorp Credit Services, Inc. ("Credit Services"), Salon Furniture Co. ("Salon"), Nissan Motor Acceptance Corporation ("Nissan"), and Equifax, Inc. ("Equifax"). Podell never served Salon with the complaint, and eventually agreed to a stipulated dismissal of his claims against Nissan and Equifax. See Podell v. Citicorp Diners Club, Inc., 914 F.Supp. 1025, 1027 (S.D.N.Y.1996). In an opinion dated July 26, 1994, the district court granted a motion by Diners Club and Credit Services to dismiss Podell's complaint against them as well. See Podell v. Citicorp Diners Club, Inc., 859 F.Supp. 701, 707 (S.D.N.Y.1994). While Podell continues to list all of these defendants in the case caption, his only remaining claims are against TRW and Trans Union
 
 
 [2]
 The TRW report that Podell obtained in June 1991 included accounts of additional debts that he allegedly owed to other creditors as well. Complaint pp 8-10. The district court confined its discussion to the Salon account, however, reasoning that Podell's allegations of TRW's fault had not referred to any of the other supposed debts and that "the complaint frames and limits the issues." See Podell, 914 F.Supp. at 1027-28 & n. 1. Podell did not contest this decision on appeal, and therefore we also restrict our review of Podell's claim against TRW to the disputed Salon account
 
 
 [3]
 Podell makes a further claim, that "there is ample evidence that the investigation was not performed properly inasmuch as TRW's documents do not match the investigation complaint by [Podell]." Appellant's Brief at 7. We have examined the documents cited in reference to this claim--which is not further illuminated in Podell's briefs--and find that it is meritless
 
 
 [4]
 Podell asserts that, "[c]learly, if such a confirmation had been sent to him, [he] would have taken advantage of his rights under the FCRA and would have requested that a statement be added to his credit report indicating that he disputed the Salon Furniture account." Appellant's Brief at 4
 
 
 [5]
 The district court nonetheless stated that there was "no documentary proof that Trans Union actually received this fax from Salon," because Trans Union assertedly could not locate a copy of the fax, and because Podell failed to produce the "fax machine-generated confirmation that the addressee received the communication." Podell, 914 F.Supp. at 1035