Efrain SOTO, Plaintiff,

v.

Joseph BELCHER, Charles Greiner,
Catherine Cook, Defendants.

No. 01 Civ. 7520(VM).

United States District Court,
S.D. New York.

Oct. 21, 2004.

Efrain Soto, New York City, Pro se.

---

## *DECISION AND AMENDED ORDER*

MARRERO, District Judge.

Plaintiff Efrain Soto ("Soto"), a former inmate under the custody of the New York State Department of Correctional Services ("DOCS"), brings an action pursuant to 42 U.S.C. § 1983. Soto makes claims alleging: 1) deliberate indifference, retaliation and conspiracy against Sergeant Joseph Belcher ("Belcher"); 2) failure to help/intervene, retaliation and conspiracy against the Superintendent of Greenhaven Correctional Facility, Charles Greiner ("Greiner"); and 3) removal from his porter II position and conspiracy against the Deputy Superintendent for Programs, Catherine Cook ("Cook"). Belcher, Greiner, and Cook (collectively, "Defendants") have moved for summary judgment on the ground that Soto failed to exhaust his administrative remedies before bringing this action. By Decision and Order dated September 30, 2004, the Court granted the motion and stated that its findings, reasoning, and conclusion would be set forth in a separate decision. Accordingly, for the reasons discussed below, Defendants' motion is granted.

## I. *BACKGROUND*

On April 30, 1998, Belcher ordered Soto to clean a Housing Block 5 ("HB5") lower tunnel area. Although he was a porter in Belcher's work area, Soto at first refused to follow the order, stating that the tunnel was not within HB5 and thus could not be assigned to him. However, the tunnel was being assigned to all HB5 porters, so Belcher again ordered Soto to clean the tunnel, telling him he would be removed from his porter position if he refused. Soto then proceeded to the tunnel and injured his back when he fell after slipping on a peanut shell that was on a stairwell in the tunnel area. Soto went to the medical unit, where he was given painkillers and ice for his back. He then returned to his cell.

Belcher, upon learning about Soto's back injury, issued him an Inmate Counseling Notification form. The form stated that Soto would have difficulty with basic porter duties because of his back injury, and that Soto should see the Program Committee to request a less strenuous assignment. However, Soto refused to sign the form and continued to work as a porter in Belcher's area.

On May 4, 1998, Soto was given a direct order by Corrections Officer Carlos Esteves ("Esteves") to clean the HB5 lower tunnel area. Soto refused, saying his back was hurting him. Esteves then told Soto to lock in his cell, and Soto complied with no further incident. Esteves then filled out an Inmate Misbehavior Report for Soto, charging him with Rule Violation No. 106.10—Refusing to Obey a Direct Order. The misbehavior report was endorsed by Belcher. Belcher also issued Soto a second Inmate Counseling Notification. Again, Soto refused to sign the form and was issued a Recommendation For Program Review form by Belcher, recom-

mending the removal of Soto from his porter duty.

Stemming from Cook's role as Program Committee Chairperson, her office handled hundreds of inmate contacts per week, including reviewing and acting upon all program assignment and change requests. An Inmate Review Packet indicates that Soto was removed from his porter II position on or about May 24, 1998, for medical or psychiatric reasons. Greiner's office also routinely received hundreds of letters each year from inmates. Although Soto had sent letters to Greiner's office complaining about Cook's decision to remove him from his porter II position, there is no indication that Greiner ever personally responded to any of Soto's letters.

Soto filed an Inmate Grievance Complaint ("IGC") against Belcher after the first incident on April 30, 1998, claiming that Belcher was retaliating against him because Soto had filed grievances against Belcher in the past. In the IGC, Soto asked to remain in his porter II position. The Inmate Grievance Resolution Committee ("IGRC") responded on May 7, 1998, by letting the Program Committee decide whether Soto should be reassigned. Soto appealed this decision to Greiner, who then denied the appeal on May 28, 1998.

On August 14, 1998, well after the time limit for appealing to the Central Office Review Committee ("CORC"), Soto wrote a letter directly to the CORC. Soto claimed that he had been moved from unit to unit and had to wait to use the law library, so his appeal should still be considered timely. He also alleged that Greiner denied his appeal because Soto had filed complaints against his wife. Lastly, he stated that he understood that his appeal would likely be dismissed for exceeding the time limit but that he was writing the letter in order to exhaust all administrative remedies. The Director of the Inmate Grievance Program ("IGP"), Thomas Eagen, replied to Soto's letter and informed him that the IGP did not provide for direct referrals of grievances to the CORC. Soto then filed suit in federal court.

## II. LEGAL STANDARD

When examining a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure, the Court may find in favor of the moving party only when it appears that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The Court's "responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight v. U.S. Fire Insurance Co.*, 804 F.2d 9, 11 (2d Cir.1986) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). Before rendering summary judgment, a court must also determine that any unresolved issues are not material to the outcome of the litigation. "[T]he mere existence of factual issues—where those issues are not material to the claims before the court—will not suffice to defeat a motion for summary judgment." *Quarles v. General Motors Corp.*, 758 F.2d 839, 840 (2d Cir.1985) (per curiam). The litigant opposing summary judgment "may not rest upon mere conclusory allegations or denials, but must bring forward some affirmative indication that his version of relevant events is not fanciful." *Podell v. Citicorp Diners Club, Inc.*, 112 F.3d 98, 101 (2d Cir.1997) (internal quotation marks and citations omitted).

## III. DISCUSSION

■ Defendants move to dismiss this action because Soto failed to exhaust his

administrative remedies before filing a complaint in this Court. The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), requires a prisoner to exhaust "such administrative remedies as are available" before suing over prison conditions. *Booth v. Churner*, 532 U.S. 731, 733–34, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001). Section 1997e(a)'s exhaustion requirement "applies to all prisoners seeking redress for prison circumstances or occurrences." *Porter v. Nussle*, 534 U.S. 516, 520, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002). The exhaustion requirement extends to cases, such as this one, where the plaintiff seeks a remedy not available through the administrative process, such as monetary damages. *See Booth*, 532 U.S. at 733–34, 121 S.Ct. 1819. The exhaustion requirement is meant to improve prison administration and "reduce the quantity and improve the quality of prisoner suits." *See Porter*, 534 U.S. at 524–25, 122 S.Ct. 983.

In the instant case, Soto was required to seek administrative relief under the three-step IGP. Under the IGP, an inmate must first file a complaint to the IGRC within 14 calendar days of an alleged occurrence. *See* 7 NYCRR § 701.7(a)(1). A hearing is scheduled at which the inmate can appear in person to argue his or her case. *See id.* at § 701.7(a)(4). If the inmate is not satisfied with the IGRC's resolution, an appeal to the superintendent can be filed within four working days after receipt of the IGRC's response. *See id.* at § 701.7(b)(1). Upon receipt of the superintendent's response, an inmate may appeal to the CORC within four working days. *See id.* at § 701.7(c)(1). Once the CORC decision has been transmitted to the inmate, the IGP clerk, the superintendent, and any direct parties, the IGP appeal process is exhausted. *See id.* at § 701.7(c)(4).

■ Soto initiated the IGP proceeding against Belcher on April 30, 1998. The IGRC denied the complaint on May 7, 1998 and Soto immediately appealed to Greiner. After Greiner denied Soto's appeal on May 28, 1998, almost two and one-half months passed before Soto wrote a letter directly to the CORC on August 14, 1998. Because the IGP allows for appeals to the CORC only within four working days of a superintendent's denial, Soto was not allowed to appeal to the CORC after June 3, 1998. His letter to the CORC does not constitute an appeal within the constraints of the IGP, and the letter of reply from Thomas Eagan at the CORC confirms that inmates cannot appeal directly to the CORC without following the channels set out by the IGP. Without mitigating circumstances, courts consistently have found that CORC's dismissal of a grievance appeal as untimely constitutes failure to exhaust available administrative remedies. *See Indelicato v. Suarez*, 207 F.Supp.2d 216, 219 n. 2 (S.D.N.Y.2002); *accord, Pozo v. McCaughtry*, 286 F.3d 1022, 1023 (7th Cir. 2002); *Smith v. Goord*, 2000 WL 264321, *1 (S.D.N.Y. Mar.9, 2000); *Steele v. NYSDOCS*, 2000 WL 777931, *1 (S.D.N.Y. June 19, 2000).

■ Soto argues that the delay in his appeal to the CORC was due to his transfer out of Sing Sing to Fishkill. However, Defendants point out that the IGP would have been available immediately upon his arrival at Fishkill. Furthermore, Soto was transferred to Fishkill on May 20, 1998, and Greiner did not deny his appeal until May 28, 1998, a week after Soto had been transferred. The Court finds no reason why Soto could not have continued the appeal process as the IGP dictates between May 28 and June 3 from the Fishkill facility.

■ Not only did Soto not exhaust his grievance against Belcher, he also did not initiate the IGP against Cook or Greiner. Soto alleges that the actions of Cook and

Greiner did not become apparent until after he was transferred from Sing Sing. Soto also claims that it would have been "impossible to file a grievance on a matter that was not viewed" until after his transfer. The Court has examined the IGP and disagrees with Soto's claims. The IGP states that "[a]n inmate must submit a complaint to the grievance clerk within 14 calendar days of an alleged occurrence" but also allows for exceptions "based on mitigating circumstances." 7 NYCRR 701.7(a)(1). Soto's claim that the actions of Cook and Greiner did not become apparent until his transfer would qualify as a mitigating circumstance, and Soto could have been allowed 14 days from the time when the actions were made known to file his grievance. Additionally, there is a procedure allowing inmates, by filing a separate grievance, to pursue a complaint alleging that an exception to the time limit was denied. *See id.* at § 701.7(a)(1).

Some of the documents in Soto's exhibits also work against his claim that he did not know of Cook's and Greiner's actions until it was too late to file grievances. Soto wrote a letter to Greiner on May 4, 1998, detailing Cook's role in his removal from the porter II position, and also sent a notice to Cook that he believed she was in violation of federal statutes and employee rules. At this point, Soto could have commenced an IGC proceeding against Cook. Also, when Soto wrote to the CORC in an attempt to appeal, he mentioned that he believed Greiner denied his appeal in retaliation for Soto's earlier complaints about Greiner's wife. The retaliation claim against Greiner could also have been filed in an IGC proceeding.

Soto's failure to use available administrative remedies to initiate his complaints against Cook and Greiner and his failure to exhaust his administrative remedies in his complaint against Belcher result in a bar of his actions under 42 U.S.C. § 1983 by operation of the PLRA. Because any administrative remedies Soto may have had are now time-barred, this action is dismissed with prejudice. *See Burns v. Moore,* No. 99 Civ. 0966, slip op., 2002 WL 91607, at *7 (S.D.N.Y. Jan. 24, 2002) (holding that because plaintiff no longer had available administrative remedies, his action must be dismissed with prejudice).

## IV.  ORDER

For the reasons stated above, it is hereby

**ORDERED** that the Court's Order dated September 30, 2004 is hereby amended to incorporate the discussion set forth above; and it is further

**ORDERED** that the motion of defendants Joseph Belcher, Charles Greiner and Catherine Cook for summary judgment is granted and the complaint of plaintiff Efrain Soto is dismissed in its entirety with prejudice. The Clerk of Court is directed to enter judgment on behalf of the defendants and to close this case.

**SO ORDERED.**