******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************************

# VIRLEE KOVACHICH *v.* DEPARTMENT OF MENTAL HEALTH AND ADDICTION SERVICES
## (AC 41976)

Alvord, Moll and Norcott, Js.

### *Syllabus*

The plaintiff employee sought to recover damages for the defendant employer's alleged violation of the Connecticut Fair Employment Practices Act (§ 46a-51 et seq.). The plaintiff alleged that the defendant discriminated against her on the basis of her disability as a result of the defendant's failure to provide her with a reasonable accommodation and retaliated against her for filing a complaint of disability discrimination. The plaintiff suffered from allergic and non-allergic rhinitis and asthma and was sensitive to scents, and, as a result, she requested a scent-free work environment and a HEPA filter for the office. The defendant's American with Disabilities Act review committee approved the plaintiff's request for a reasonable accommodation. Some employees, however, did not comply with the scent-free working environment designation. The plaintiff filed a complaint with the Commission on Human Rights and Opportunities and it issued a release of jurisdiction to sue. The court rendered judgment for the plaintiff, from which the defendant appealed and the plaintiff cross appealed. *Held*:

1. Contrary to the plaintiff's claim, the defendant's appeal was not moot because it failed to challenge the court's judgment on the plaintiff's retaliation claim; the defendant challenged evidence the trial court admitted and relied on to determine that the defendant failed to engage in the interactive process and this determination was not limited to the plaintiff's discrimination claim and, thus, because the two claims and the trial court's rulings thereon were intertwined, the defendant's appeal sufficiently challenged the court's judgment as to both counts.

2. The trial court improperly imposed liability on the defendant on the basis of inadmissible evidence, and, accordingly, the case was remanded for a new trial; the court impermissibly considered e-mails exchanged between the parties that constituted settlement communications on the issue of liability, and based its finding that the defendant had failed to engage in the interactive process on those e-mails; moreover, in light of this court's reversal of the judgment of the trial court and remand for a new trial, it was not necessary to address the plaintiff's claims raised in her cross appeal.

3. The trial court improperly precluded admission of the plaintiff's deposition responses that had been amended on an errata sheet; the plaintiff's original deposition responses were admissible as they remained a part of the record, and the defendant was permitted to use the plaintiff's deposition testimony, errata sheet notwithstanding, pursuant to the applicable provision (§ 8-3) of the Connecticut Code of Evidence as a statement made by a party opponent and the applicable rule of practice (§ 13-31 (a) (3)), which allows deposition testimony of a party to be used by an adverse party for any purpose; moreover, once the original responses were entered into evidence, the plaintiff would be permitted to introduce the amended answers and explain the reasons for the change.

4. The trial court erred in concluding that all statements made by employees of the defendant were admissible pursuant to the applicable provision (§ 8-3 (1) (D)) of the Connecticut Code of Evidence; the plaintiff failed to establish, and the trial court did not determine, that the statements sought to be admitted related to a matter within the scope of the declarants' employment and, in the absence of an analysis whether the statements did in fact relate to a matter within the scope of the declarants' employment, the statements should not have been admitted.

Argued December 5, 2019—officially released July 28, 2020

### *Procedural History*

Action to recover damages for, inter alia, alleged

employment discrimination, and for other relief, brought to the Superior Court in the judicial district of New London, where the matter was tried to the court, *Hon. Joseph Q. Koletsky*, judge trial referee; judgment for the plaintiff, from which the defendant appealed and the plaintiff cross appealed. *Reversed*; *new trial.*

*Clare Kindall*, solicitor general, with whom, on the brief, were *William Tong*, attorney general, and *Matthew F. Larock* and *Nancy A. Brouillet*, assistant attorneys general, for the appellant-appellee (defendant).

*Jacques J. Parenteau*, with whom was *Magdalena Wiktor* for the appellee-appellant (plaintiff).

*Michael E. Roberts*, *Scott Madeo*, and *Kimberly A. Jacobsen* filed a brief for the Connecticut Commission on Human Rights and Opportunities as amicus curiae.

*Opinion*

ALVORD, J. The defendant, Department of Mental Health and Addiction Services, appeals from the judgment of the trial court rendered following a court trial in favor of the plaintiff, Virlee Kovachich. The plaintiff filed a cross appeal. On appeal, the defendant claims that the court improperly (1) admitted into evidence settlement communications between the parties, (2) found that the defendant violated the Connecticut Fair Employment Practices Act (act), General Statutes § 46a-60 et seq., by providing insufficient accommodations to the plaintiff and failing to engage in the interactive process required under the act, (3) precluded the defendant from cross-examining the plaintiff with deposition testimony that was changed through an errata sheet, and (4) determined that hearsay statements by any state employee, including statements from the plaintiff's union representatives, were admissible against the defendant as admissions by a party opponent.[1] On cross appeal, the plaintiff claims that the court improperly denied both her posttrial request to file a second amended complaint to conform to the proof at trial and motion to open the judgment.[2] We agree with the defendant's first, third, and fourth claims and, accordingly, reverse the judgment of the trial court.[3]

The following facts, as found by the trial court or otherwise undisputed, and procedural history are relevant to our resolution of this appeal. The plaintiff worked as a licensed practical nurse for the defendant and primarily was assigned to the Brief Care Unit of the Southeastern Mental Health Authority (SMHA). At some point during her employment with the defendant, the plaintiff began experiencing reactions to scents. On January 24, 2011, the plaintiff submitted to the defendant a medical provider report from her physician, Doron J. Ber, which stated that she "has allergic and non-allergic rhinitis and asthma. These conditions are intermittent, but can be 100 [percent] debilitating." The plaintiff requested from the defendant accommodations in the form of a "scent free work environment" and a "HEPA filter for the office."

In an April 14, 2011 letter, Tommy Wilson, the chairperson of the defendant's review committee pursuant to the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. § 12101 et seq., notified the plaintiff that "the . . . committee approves your request for a reasonable accommodation." The letter set forth the following as "the committee's final reasonable accommodations": "1. Upon admission to the brief care unit all clients are to turn over all aerosol sprays to be locked up and inventoried by staff with their personal belongings. Upon being discharged from the brief care unit all inventoried aerosol sprays along with their belongings are to be returned. 2. That the scent-free working environment signs remain up on the unit and that all staff is notified

of the scent-free environment and what that means. 3. To notify any overtime staff that the brief care unit is scent-free. 4. The agency is to provide a working air filtration system with a HEPA filter; the filter system can be the existing filter system or a portable unit that is able to filter the entire brief care office area. The nurse's station is 294 square feet and the entire unit is 8470 square feet." Following the approval of the plaintiff's accommodations, some employees did not comply with the scent-free working environment designation. In a February 1, 2012 letter to Cheryl Jacques, the director of SMHA, the plaintiff's counsel sought "to engage in an interactive process with respect [to] the provision of reasonable accommodations for [the plaintiff's] disability and ensuring that she is adequately protected in the workplace." The plaintiff's counsel requested a meeting to discuss the plaintiff's concerns and potential accommodations that could be made to address those concerns. A meeting was held on April 3, 2012. The plaintiff, her counsel, Wilson, and Human Resources Director Theresa Tiska attended. The attendees discussed the plaintiff's requests that the defendant include a notice on the Brief Care Unit overtime sign-up sheet, provide educational materials to coworkers, and take additional action to enforce the scent-free working environment.

On April 13, 2012, the plaintiff filed a complaint with the Commission on Human Rights and Opportunities (commission), alleging that she was denied reasonable accommodations on the basis of a disability. The commission issued a release of jurisdiction to sue on September 9, 2013.[4] On September 30, 2013, the plaintiff commenced the present action.[5] In count one of the operative complaint filed March 4, 2015, the plaintiff alleged that the defendant had discriminated against her in the terms and conditions of her employment by failing to provide reasonable accommodations for the plaintiff's disability and by failing to engage in a good faith interactive process in violation of the act. The plaintiff alleged that she continued to suffer adverse incidents caused by coworkers' violations of the scent-free working environment designation. She alleged that the defendant made no serious effort to educate the workforce and that "[t]he lack of educational efforts has led to misunderstandings and has prevented voluntary compliance with the restriction." She alleged that the defendant refuses to enforce Work Rule 13, which prohibits intentionally interfering with the productivity of another employee, when an employee intentionally interferes with the plaintiff's ability to perform her work by knowingly wearing a chemical-based fragrance. She further alleged that the defendant had "failed to assist its own managers in the implementation of the fragrance free restriction, including [a] policy drafted in April, 2011, to the frustration of on line managers and union delegates responsible for the safety of the employees they work with day-to-day." Lastly, the plaintiff alleged that the defendant "failed to

engage in a good faith interactive process designed to solve the reasonable accommodation problem by failing to meet with [the] plaintiff and her representatives and rejecting all of [the] plaintiff's proposals without offering alternative solutions." She alleged that she "has suffered the loss of wages and benefits, including significant compensatory and sick time, and has suffered emotional distress, loss of enjoyment of life and harm to her reputation."

In count two, the plaintiff alleged that the defendant "has retaliated against [her] for filing a complaint of disability discrimination, has failed to engage in a good faith interactive process, and has failed to accommodate her disability." She further alleged that she had been constructively discharged because of her disability. She alleged that the defendant retaliated against her "for opposing the discriminatory conduct [to] which she was subjected by not providing the accommodations sought leading to the constructive discharge" of the plaintiff. She alleged that as a result of the defendant's conduct, she "has suffered damages including, but not limited to, loss of wages, loss of enjoyment of life, emotional distress and attorney's fees and costs." On December 2, 2015, the defendant filed an answer and special defenses. The plaintiff filed her reply on November 30, 2016.[6]

The matter was tried to the court, *Hon. Joseph Q. Koletsky*, judge trial referee, in March and April, 2018. On April 20, 2018, the court issued its oral decision rendering judgment for the plaintiff, determining that the plaintiff had proven her allegations of violations of the act. The court found "that the plaintiff was deprived of $3800 of additional pension income, finding it more probable than not the plaintiff would have worked for two more years but for the wrongful actions of the defendant." The court further found that the plaintiff was constructively discharged. It awarded the plaintiff $125,000 in damages for "emotional distress caused by the actions of the defendant . . . ."

On April 20, 2018, the plaintiff filed a motion for attorney's fees, and the defendant filed an objection on July 17, 2018. The plaintiff filed a memorandum in support of her motion for attorney's fees on July 25, 2018, and the defendant filed an objection on August 22, 2018. At the conclusion of oral argument on August 23, 2018, the court orally granted the motion, awarding the plaintiff attorney's fees in the amount of $415,389.50. The plaintiff subsequently filed a motion to open the judgment and a request for leave to amend her complaint to conform to the proof at trial, both of which were denied. The defendant appealed, and the plaintiff cross appealed.

As a threshold matter, we address the plaintiff's contention that the defendant's appeal is moot because it "does not contest the trial court's factual and legal

finding of retaliation violating § 46a-60 (a) (4)." We disagree.

"Mootness is a question of justiciability that must be determined as a threshold matter because it implicates [a] court's subject matter jurisdiction . . . . In determining mootness, the dispositive question is whether a successful appeal would benefit the plaintiff or defendant in any way." (Internal quotation marks omitted.) *Stamatopoulos* v. *ECS North America, LLC*, 172 Conn. App. 92, 97, 159 A.3d 233 (2017).

The plaintiff argues that each of the claims raised by the defendant on appeal concerns only the plaintiff's claim of discrimination asserted in count one of her complaint. She maintains that "even if this court were to agree with [the] defendant on count one, no practical relief can be provided in light of the trial court's unchallenged finding of retaliation on count two." The defendant responds that the plaintiff and the court relied on the same nexus of facts for both counts and that the plaintiff's "retaliation claims were completely enmeshed with her disability discrimination claims that [the] defendant failed to accommodate her disability and failed to engage in a good faith interactive process." Emphasizing that the court "failed to separate the counts or issue separate findings for the counts," it argues that it has challenged the entirety of the court's ruling. We are persuaded that we have jurisdiction to address the defendant's appellate claims.

We do not construe the defendant's appellate claims as limited to challenging the court's judgment on the plaintiff's discrimination claim only. As we conclude subsequently in this opinion, the court improperly admitted into evidence settlement documents and relied on those documents in support of its determination that the defendant failed to engage in the interactive process. That error is not confined to the plaintiff's discrimination claim. The plaintiff's retaliation count specifically alleged that the defendant had "retaliated against [her] for filing a complaint of disability discrimination, [had] failed to engage in a good faith interactive process, and [had] failed to accommodate her disability." Thus, we agree with the defendant that the plaintiff's retaliation claim was entwined with her discrimination claim. Because the claims in the trial court and the court's rulings thereon were interrelated, the defendant's appeal sufficiently challenges the court's rendering of judgment on both counts. See *In re Elijah C.*, 326 Conn. 480, 496, 165 A.3d 1149 (2017) (concluding that appeal was not moot for failure to adequately brief challenge to independent basis where challenge to court's second finding was inextricably linked with challenge to first finding and, considering interdependence of claims, respondent's second claim was sufficiently clear to permit court to address it on its merits). Accordingly, we conclude that the defendant's appeal

is not moot.

Before turning to the merits of the defendant's claims, we briefly set forth the standard of review applicable to those claims. "When presented with an evidentiary issue, as in this case, our standard of review depends on the specific nature of the claim presented. . . . [T]o the extent a trial court's admission of evidence is based on an interpretation of [law], our standard of review is plenary. . . . A trial court's decision to admit evidence, if premised on a correct view of the law, however, calls for the abuse of discretion standard of review." (Citations omitted; emphasis omitted; internal quotation marks omitted.) *Midland Funding, LLC* v. *Mitchell-James*, 163 Conn. App. 648, 653, 137 A.3d 1 (2016).

I

We first address the defendant's claim that the court improperly admitted into evidence settlement communications exchanged between the parties during the mandatory mediation process before the commission and relied on those communications in finding the defendant liable for violations of the act. We agree with the defendant.

The following additional facts and procedural history are relevant to this claim. On March 1, 2018, the defendant filed a motion in limine arguing, inter alia, that evidence of settlement negotiations, including documents that were part of the commission's mandatory mediation process, were inadmissible. It first maintained that the offers to compromise were inadmissible pursuant to § 4-8 of the Connecticut Code of Evidence. It also argued that the documents were inadmissible because they were part of the mandatory mediation process required by General Statutes § 46a-83.[7] The court reserved ruling on the motion. During the plaintiff's direct examination on March 8, 2018, the plaintiff's counsel sought to introduce into evidence an April 29, 2013 e-mail from the plaintiff's counsel to Assistant Attorney General Jill Lacedonia (exhibit 13). Exhibit 13, which has a subject line stating "RE: Kovachich— request for demand," asks to arrange a time to talk, mentions certain issues on which the parties purportedly reached agreement "at the last mediation session," attaches information regarding policies adopted by certain employers regarding scent-free working environments, and discusses the state of the law surrounding scent-free working environments. It concludes by stating: "In any event if you are willing to work with me to find a solution then we can see if litigation can be avoided. I am available on Friday."

At trial, the plaintiff's counsel stated that he was seeking to admit exhibit 13 "for the purpose stated that it was compiled by her attorney for the purpose of providing it to the state." The trial court inquired whether it was offered "for the truth," and the plaintiff's counsel

responded: "Nope, for the purpose of communication." The defendant's counsel objected to exhibit 13, stating that her "chief objection is these are settlement demands" and seeking to direct the court's attention to the statutory provision governing mandatory mediation at the commission.[8] The court overruled the objection, stating that it was "unable to [perceive] a settlement demand in exhibit 13, and the document is nonhearsay, not offered for the truth of the statements asserted."

The plaintiff's counsel also offered into evidence a May 30, 2013 e-mail from him to Assistant Attorney General Lacedonia (exhibit 14). The e-mail attaches a number of April, 2013 e-mails regarding recent instances of scent exposures. The text of the e-mail states in part: "Virlee is not going to accept a solution that has her apply for disability retirement as you suggested. We thin[k] that is the wrong approach to disability that can be accommodated. We are going to move forward with this case. We would like that to be in context of the agency changing its approach—to formally adopt a policy that is endorsed by the highest levels of management, to educate, and to empower supervisors to take action when employees intentionally disrespect the right to breathe despite e-mails asking for awareness. Let me know what solutions your side proposes." The defendant's counsel objected to exhibit 14, stating: "They go to settlement discussions at the [c]ommission . . . and therefore, should not be admitted . . . ." The court overruled the objection and admitted exhibit 14 in full.

The plaintiff's counsel also sought to introduce into evidence a July 22, 2013 letter he wrote to Daniel Salerno, an investigator with the commission, and copied to the plaintiff and Assistant Attorney General Lacedonia (exhibit 12).

Exhibit 12, a letter, begins by stating: "I am writing at your request to clarify the demands of our client with respect to her claim of disability discrimination." The letter asserted the following demands: (1) "[The defendant] will adopt a policy of scent restriction following consultation with the union and its membership will adopt a scent free policy modeled on the attached Human Resources Administrative Rule implemented by the City of Portland, Oregon. The policy will apply to all . . . buildings [controlled by the defendant]. The policy will request that employees refrain from the use of strongly scented products. Supervisors will be permitted to enforce the policy when it becomes apparent that the use of a scent is interfering with a [coworker's] ability to breathe, and by extension, his or her ability to do the job. Discipline will not be imposed for unknowing violation of the scent free restriction; only when the employee knowingly refuses to accommodate a [coworker's] disability, thereby placing the [coworker] at risk of potential adverse health consequences

will progressive discipline be imposed at the discretion of management. The collective bargaining agreement, [a]rticle 34, provides support for this policy: 'The employer shall maintain safe and healthy working conditions. The employer agrees to take reasonable measures to provide a work environment which minimizes the risk of injury to employees.' Work rule # 13 also provides support for the imposition of discipline when an employee knowingly refuses to modify behavior that may cause harm to another employee and prevent that employee from doing the job—'An employee shall not interfere with the productivity of other employees or cause any interruption of work.' " (2) "[The defendant] will educate the [workforce], train supervisors, and post notices in buildings and offices that it controls in order to implement the policy and inform employees and the public of the scent free policy." (3) "[The defendant] will offer scent free classes for mandatory training or provide mandatory training on line." (4) "To the extent that [the defendant] has not done so, it will provide a working air filtration system with a HEPA filter to filter the entire unit where [the plaintiff] is assigned." (5) "[The plaintiff] will be allowed to leave the immediate area when a violation of the scent free restriction occurs that may cause her to sustain adverse health consequences and a safe room will be made available to [the plaintiff] to use for the duration of her shift until the scent restricting her ability to work is removed from the air she is breathing. Additionally, the person violating the scent free restriction will be asked to leave the area and remove the scent before accessing the area again." (6) "[The plaintiff] will not be penalized on the overtime list if she is unable to accept an overtime opportunity because the location is likely to cause her to be exposed to scents harmful to her health. Her place on the overtime list will be preserved and she will be offered the next overtime opportunity that she is able to take." (7) "All of [the plaintiff's] 67 hours of sick time will be restored or she will be paid the monetary equivalent which we calculate as $2106." (8) "[The defendant] will reimburse and pay [the plaintiff's attorney's] fees which are $16,773 to date." The letter further stated: "We would be happy to meet with representatives of the [defendant] who have authority to discuss and recommend these requests."

When offering exhibit 12 into evidence, the plaintiff's counsel stated that it was offered "not for the truth of the matter asserted, but for the fact that this proposal was presented." The defendant's counsel objected on the basis that it contained settlement discussions and was part of the commission's mediation process and was therefore inadmissible. The court overruled the objection, stating that "[t]hey are highly relevant to the state's ability to react intelligently and legally to requests for accommodation. They are inseparable in my mind between what might be a technical request

for settlement, which I doubt, and a perfectly admissible request for reasonable accommodation for an acknowledged disability by the defendant. Therefore, the objection is overruled."

During the defendant's cross-examination of the plaintiff on March 15, 2018, the defendant introduced into evidence a May 3, 2013 e-mail from Assistant Attorney General Lacedonia to the plaintiff's counsel (exhibit OOOOO), which was Lacedonia's reply to the e-mail from the plaintiff's counsel that had been introduced into evidence as exhibit 13. The plaintiff's counsel stated that he had no objection, and the court admitted exhibit OOOOO in full. Exhibit OOOOO states: "Thanks for these materials. They seem to support the position that requests for voluntary compliance in limiting scents in the workplace (which my client has done extensively) is a reasonable accommodation, while mandatory scent free policies are not. I left you a voicemail message around noon today. I look forward to hearing from you what [the plaintiff] is seeking in resolution of this matter and am hopeful that you have a creative solution that will be workable for all parties."

In its oral decision issued on April 20, 2018, referencing the good faith interactive process, the court found that the process "did not continue after the plaintiff's attorney's letter to . . . Assistant Attorney General Jill Lacedonia. The court infers that from no evidence of any response whatsoever."

On appeal, the defendant argues that the court improperly admitted into evidence exhibits 12, 13, and 14. The plaintiff responds that the "trial court properly admitted [exhibits] 12, 13, and 14 because the e-mails were not offers of compromise and the proposal was part of [the] plaintiff's effort to find a solution to the question of reasonable accommodation." She argues that exhibits 13 and 14 "were directed to counsel for the defendant and contained information and case law that supported [the] plaintiff's claim for enforcement of the scent-free restriction; there was no 'demand' despite the appearance of the word 'demand' in [the] subject line of the e-mail." She further argues that exhibit 12 communicated the "plaintiff's proposal for reasonable accommodation and sought a meeting to further discuss the matter. While the letter does indicate a desire to 'clarify demands,' the letter is primarily designed as a proposal for a good faith discussion with a request to meet with appropriate officials of the [defendant]." We agree with the defendant.

We begin our analysis by setting forth relevant legal principles. "It has long been the law that offers relating to compromise are not admissible on the issue of liability." *Simone Corp.* v. *Connecticut Light & Power Co.*, 187 Conn. 487, 490, 446 A.2d 1071 (1982). Section 4-8 (a) of the Connecticut Code of Evidence provides the general rule that "[e]vidence of an offer to compromise

or settle a disputed claim is inadmissible on the issues of liability and the amount of the claim." The rule does not require the exclusion of "[e]vidence that is offered for another purpose, such as proving bias or prejudice of a witness, refuting a contention of undue delay or proving an effort to obstruct a criminal investigation or prosecution, or . . . statements of fact or admissions of liability made by a party." Conn. Code Evid. § 4-8 (b) (1) and (2). "This rule reflects the strong public policy of promoting settlement of disputes." *Miko* v. *Commission on Human Rights & Opportunities*, 220 Conn. 192, 209, 596 A.2d 396 (1991). Pursuant to General Statutes § 46a-84 (e), hearing officers appointed by the commission are prohibited from receiving in evidence "[a]ny endeavors or negotiations for conciliation, settlement or alternate dispute resolution."[9] See also *Miko* v. *Commission on Human Rights & Opportunities*, supra, 210. Moreover, § 46a-83 (j) protects from disclosure "what has occurred in the course of the commission's processing of a complaint, provided the commission may publish the facts in the case and any complaint that has been dismissed and the terms of conciliation when a complaint has been adjusted."[10]

We next set forth our standard of review. A trial court's decision as to whether to admit settlement communications, and for what purpose, is reviewed for an abuse of discretion. See *Monti* v. *Wenkert*, 287 Conn. 101, 126, 947 A.2d 261 (2008); *Bugryn* v. *Bristol*, 63 Conn. App. 98, 111, 774 A.2d 1042, cert. denied, 256 Conn. 927, 776 A.2d 1143 (2001), cert. denied, 534 U.S. 1019, 122 S. Ct. 544, 151 L. Ed. 2d 422 (2001). "[A] trial court may exercise its discretion with regard to evidentiary rulings, and the trial court's rulings will not be disturbed on appellate review absent abuse of that discretion. . . . In our review of these discretionary determinations, we make every reasonable presumption in favor of upholding the trial court's ruling. . . . Evidentiary rulings will be overturned on appeal only where there was an abuse of discretion and a showing by the [appellant] of substantial prejudice or injustice." (Internal quotation marks omitted.) *Bugryn* v. *Bristol*, supra, 111.

Turning to the documents at issue, exhibit 12 is addressed to Salerno, an investigator with the commission, and copied to the plaintiff and Assistant Attorney General Lacedonia. It makes clear that the purpose of the communication is to provide a response to Salerno's "request to clarify the demands of our client with respect to her claim of disability discrimination."[11] With respect to exhibits 13 and 14, both communications are addressed to Assistant Attorney General Lacedonia. The subject line of exhibit 13 is "RE: Kovachich— request for demand," and it discusses issues on which the parties purportedly reached agreement "at the last mediation session." It concludes by stating: "In any event if you are willing to work with me to find a solu-

tion then we can see if litigation can be avoided." Last, exhibit 14 discusses the plaintiff's intention of moving forward with the case, restates certain of her previous requests of the defendant, and asks Assistant Attorney General Lacedonia to respond with "solutions your side proposes." Given the content of the communications, we conclude that the court abused its discretion in admitting the challenged evidence on the basis that it did not constitute settlement communications.

Turning to the requirement that the appellant show substantial prejudice, we note that the court, after admitting into evidence the settlement communications, relied on those communications to conclude that the interactive process "did not continue after the plaintiff's attorney's letter to . . . Assistant Attorney General Jill Lacedonia. The court infers that from no evidence of any response whatsoever."[12] Thus, it is apparent that the court impermissibly considered the plaintiff's settlement communications on the issue of liability. Accordingly, we agree with the defendant that the trial court erred in admitting exhibits 12, 13, and 14 into evidence and grounding its finding that the defendant had failed to engage in the interactive process on the inadmissible settlement communications. Compounding its error, the court incorrectly "[inferred] . . . from no evidence of any response whatsoever" that the interactive process "did not continue after the plaintiff's attorney's letter to . . . Assistant Attorney General Jill Lacedonia." Contrary to the court's finding, a reply e-mail, exhibit OOOOO, was admitted into evidence as a full exhibit, and that e-mail further references a voicemail that Lacedonia left for the plaintiff's counsel.

The plaintiff argues that the exception to the general rule of inadmissibility for evidence that is offered for another purpose is applicable. The plaintiff maintains that because "the documents were offered as evidence of efforts made by [the] plaintiff to engage [the] defendant in an interactive good faith discussion, the evidence was clearly offered for another purpose, a recognized exception to the rule." In support of this argument, the plaintiff cites federal cases that "have admitted evidence of compromise offers and negotiations for the purpose of showing that the parties engaged in the interactive process . . . ." In *Griesinger* v. *University of Cincinnati*, United States District Court, Docket No. 1:13-cv-808 (KLL) (S.D. Ohio March 25, 2016), the United States District Court for the Southern District of Ohio concluded that offers of accommodations made by counsel for the defendant to the plaintiff's counsel with respect to a skills assessment needed prior to completing a practicum, including, inter alia, advance notice of the skills to be tested, individual instructions, and an opportunity to watch other students' skills tests, could be admissible for the purpose of showing that the university engaged in the interactive process to reach a reasonable accommoda-

tion. In a previous decision from the United States District Court for the Southern District of Ohio, *Linebarger* v. *Honda of America Mfg., Inc.*, 870 F. Supp. 2d 513, 521 n.2 (S.D. Ohio 2012), the court found that interactions between counsel regarding accommodations offered to an employee in the form of two additional unscheduled break periods were not barred by rule 408 of the Federal Rules of Evidence where the communications were made in an effort to reach a consensus on a reasonable accommodation. In *Cook* v. *Morgan Stanley Smith Barney*, United States District Court, Docket No. H-13-1321 (GHM) (S.D. Tex. August 15, 2014), the United States District Court for the Southern District of Texas denied a motion to strike the affidavit of the defendant's counsel, which stated that "during the interactive process to see if there was any accommodation that could be made to facilitate [the plaintiff's] return to work . . . [the plaintiff's counsel] advised that his client would not be returning to work at [the defendant] and would move forward with filing a claim against [the defendant]." (Internal quotation marks omitted.) The court stated that the evidence contained in the affidavit was used to support the defendant's argument that the plaintiff had refused to return to work without a change in supervisor. Id. The court concluded that the evidence was being used "not to show liability but to show that [the defendant] was engaging in the interactive process." Id. In *Williams* v. *British Airways*, *PLC*, United States District Court, Docket Nos. 04-CV-0471, 06-CV-5085 (CPS) (SMG) (E.D.N.Y. September 27, 2007), the United States District Court for the Eastern District of New York stated that "settlement discussions may be considered in the ADA context for the purpose of assessing a party's participation in the interactive process." The court considered statements contained in an affidavit detailing settlement discussions that occurred during a conference with a magistrate. Id.

We note that, unlike the cases cited by the plaintiff, the present case concerns settlement communications that occurred within the context of the commission's mandatory mediation program. The general rule that evidence of attempted settlements is not admissible against either party to the settlement negotiations is consistent with the statutory protections afforded conciliation efforts before the commission. As set forth previously, § 46a-84 (e) prohibits hearing officers from receiving in evidence "[a]ny endeavors or negotiations for conciliation, settlement or alternate dispute resolution . . . ." Relatedly, § 46a-83 (j) protects from disclosure "what has occurred in the course of the commission's processing of a complaint, provided the commission may publish the facts in the case and any complaint that has been dismissed and the terms of conciliation when a complaint has been adjusted."

As the commission's amicus brief explains, the act "relies heavily on conciliation as a means of eliminating

discriminatory employment practices. To further this process, the act bars absolutely the disclosure of conciliation endeavors and postpones disclosure of complaints until they have been dismissed or adjusted. The obvious purpose of providing confidentiality is to encourage compromise, while premature disclosure might force the parties into public postures, which would inhibit or prevent settlements." *Green* v. *Freedom of Information Commission*, 178 Conn. 700, 703, 425 A.2d 122 (1979). As the commission argues, "[w]eakening the safeguards which generally preclude parties from offering settlement or compromise evidence into the record would have a chilling effect on the commission's mediation efforts, eviscerating the conciliatory purpose and expeditious nature of the commission's administrative process. This remains the case even when such evidence relates to details of the interactive process." We agree with the commission's sentiment and conclude that the trial court imposed liability on the defendant on the basis of inadmissible evidence. Accordingly, we reverse the judgment of the court and remand the matter for a new trial.

II

In light of the fact that we are remanding the matter for a new trial, we address, as a matter likely to arise on remand, the defendant's claim that the court improperly precluded admission of the plaintiff's deposition responses "because [the] plaintiff had amended those responses on an errata sheet." The plaintiff responds that, "because [the] defendant chose to accept the changes made to the errata sheet, [the] plaintiff's prior testimony was not admissible."[13] We agree with the defendant.

The following additional procedural history is relevant to our resolution of this claim. The plaintiff was deposed on April 7, 2017, and the defendant filed a motion for summary judgment on April 21, 2017. The plaintiff subsequently executed an errata sheet, in which she amended eleven deposition responses, three of which amendments are relevant for purposes of this appeal. The plaintiff changed her response that she had her hair permed every six to eight weeks between 2010 and 2014, to "I did not have my hair permed between 2010 and 2014."[14] Next, the plaintiff testified during her deposition that she had not discussed with SMHA officials transferring to a position that did not involve direct patient care. In her errata sheet, the plaintiff amended her response to state: "I asked Tommy Wilson on two occasions to find employment elsewhere." Finally, the plaintiff testified during her deposition that she "did not take any" steps to notify management that the accommodations were not working. In her errata sheet, she changed that response to state: "I frequently e-mailed management notifying them of the continued scent exposures." In her errata sheet, the plaintiff stated as

the reason for each of the eleven changes that "I was having difficulty concentrating on the task at hand due to the stress of losing my father, concern for my mother's health, who I had left in Florida to attend the deposition, and my own physical illness."

On May 30, 2017, the defendant filed a motion to suppress the errata sheet, in which it argued, inter alia, that the plaintiff's changes to her deposition responses were material and substantive and that they "effectively destroy the usefulness of the prior deposition." The plaintiff filed an objection. In its ruling denying the motion to suppress, the court, *Bates*, *J.*, agreed with the defendant that many of the corrections made on the errata sheet were "actually changes in the deposition testimony . . . ." The court declined to strike the corrections, stating that "the majority of courts which have faced this request have taken another approach . . . they allow the disputed errata sheet items to remain in the court records under seal. . . . However, as a condition of allowing the altered deposition testimony to remain in the court records, the party who took the deposition has the right to reopen the deposition at the expense of the deponent and engage in examination of the deponent regarding these 'new facts.' " (Citation omitted.) The court then directed the defendant "to identify any 'corrections' noted by the plaintiff that it is willing to accept." The court stated that the defendant then could notice a new deposition of the plaintiff to explore the changes. The court ordered the plaintiff to bear the cost of the new deposition. On July 6, 2017, the defendant, in response to the court's order directing it to identify any corrections it was willing to accept, filed a notice stating, "[n]otwithstanding that the plaintiff's changes are internally contradictory, the defendant will accept these changes and proceed on the pending motion for summary judgment."[15] (Footnote omitted.)

During the cross-examination of the plaintiff at trial, on March 8, 2018, the defendant's counsel asked the plaintiff whether she had her hair permed regularly from 2010 through 2014. The plaintiff testified that she "did not go to a hairdresser at all between that timeframe." The defendant's counsel indicated that she would like to enter as full exhibits portions of the plaintiff's deposition testimony as admissions of the plaintiff. The plaintiff's counsel responded: "[T]he issue that we would have with that is that the pages of the deposition that tend to be used, at least some of them, were corrected by an errata sheet and so what's being offered is not the actual answer." The issue was not resolved and was raised again on March 14, 2018. The plaintiff's counsel informed the court that the defendant, in response to the court's order on the motion to suppress the errata sheet, had filed a pleading in which it accepted the changes made in the errata sheet. The issue again was not resolved because the defendant's counsel stated that she intended to inquire of the wit-

ness on a different topic.

The next day, on March 15, 2018, in connection with the cross-examination of the plaintiff, the defendant's counsel sought to introduce into evidence an excerpt of the plaintiff's deposition testimony as an admission of the plaintiff. The excerpt contained the plaintiff's original deposition testimony that she had her hair permed every six to eight weeks. The plaintiff's counsel objected on the basis that "an errata sheet was filed with the change accepted . . . ." The defendant's counsel responded that the original testimony was "still an admission of a party opponent," and that while the plaintiff's counsel may wish to enter into evidence the errata sheet, it "does not change the fact that she made the statement" and "[i]t doesn't erase her testimony." The court stated that it disagreed with the interpretation of the defendant's counsel. In response, counsel referred the court to § 8-3 of the Connecticut Code of Evidence,[16] containing the hearsay exception for a statement by a party opponent, and Practice Book § 13-31 (a) (3), permitting the use of the deposition of a party by an adverse party for any purpose. Following argument, the court sustained the plaintiff's objection to the "offer of the proffered exhibit with respect to hair coloring unless the errata sheet is incorporated."

The defendant's counsel then sought to impeach the plaintiff with the original deposition testimony, on the basis that the original testimony constituted a prior inconsistent statement.[17] The plaintiff objected, and the court sustained the objection, stating, "[y]ou're simply reading from the deposition and the objection is sustained because it's not inconsistent with any testimony that I recall." The defendant's counsel again asked the plaintiff whether she recalled testifying at her deposition regarding having her hair permed, and whether she ever had her hair permed between 2010 and 2014. The plaintiff's counsel objected, and the court stated that it was the same objection he had sustained previously. The defendant's counsel responded that she had asked the plaintiff only regarding coloring her hair, not perming it. The following exchange then occurred:

"The Court: You read all the way through hair perm and [the plaintiff's counsel] objected and I sustained the objection. There will be no more—there will be no more questions on page sixty-one and sixty-two of the deposition, period.

"[The Defendant's Counsel]: Your Honor, I believe I only read through line four on page sixty-two.

"The Court: Most recently, yes.

"[The Defendant's Counsel]: Okay.

"The Court: Before the break, however, you read almost the entire pages when [the plaintiff's counsel] objected and I sustained it. Once more, there will be no further questions on pages sixty-one and sixty-two

of the deposition for any reason whatsoever.

"[The Defendant's Counsel]: May I make an offer of proof, Your Honor?

"The Court: No, you may not. It is not a relevance objection, therefore, you do not have the right to make an offer of proof. Please put a question."

On appeal, the defendant argues that the trial court improperly precluded admission of the plaintiff's original deposition responses. We agree with the defendant.

We first set forth relevant principles of law. Practice Book § 13-31 (a) governs the use of depositions in court proceedings and provides in relevant part that "any part or all of a deposition, so far as admissible under the rules of evidence applied as though the witness were there present and testifying, may be used against any party who was present or represented at the taking of the deposition or who had reasonable notice thereof, in accordance with any of the following provisions: (1) Any deposition may be used by any party for the purpose of contradicting or impeaching the testimony of the deponent as a witness. . . . (3) The deposition of a party . . . may be used by an adverse party for any purpose." Practice Book § 13-31 (a) (3), permitting the use of the deposition of a party by an adverse party for any purpose, is consistent with the rules of evidence permitting a statement by a party opponent to be admitted into evidence as an exception to the hearsay rule. See *Gateway Co.* v. *DiNoia*, 232 Conn. 223, 238, 654 A.2d 342 (1995).

"[T]he trial court has discretion to admit or exclude deposition testimony offered as evidence under § 248 [now Practice Book § 13-31 (a) (3)]. . . . While it is normally true that this court will refrain from interfering with a trial court's exercise of discretion . . . this presupposes that the trial court did in fact exercise its discretion. [D]iscretion imports something more than leeway in decision-making. . . . It means a legal discretion, to be exercised in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice." (Internal quotation marks omitted.) *Friends of Animals, Inc.* v. *United Illuminating Co.*, 124 Conn. App. 823, 834–35, 6 A.3d 1180 (2010); see id., 835 (trial court failed to exercise discretion properly where it based its decision to exclude evidence on rule of practice permitting introduction of deposition transcript into evidence where deponent is unavailable, rather than provision stating that deposition of party may be used by adverse party for any purpose).

Applying these principles to the present case, § 8-3 of the Connecticut Code of Evidence and Practice Book § 13-31 (a) (3) permitted the defendant to use at trial the deposition testimony of the plaintiff, an adverse party, for any purpose, including as a statement by a

party opponent or to impeach the testimony of the plaintiff. The issue in the present case, however, arises out of the defendant's effort to use deposition testimony that later was amended by an errata sheet. Practice Book § 13-30 (d), which governs the use of errata sheets, provides in relevant part: "If requested by the deponent or any party, when the testimony is fully transcribed the deposition shall be submitted to the deponent for examination and shall be read to or by the deponent. Any changes in form or substance which the deponent desires to make shall be entered upon the deposition by the officer with a statement of the reasons given by the deponent for making them. The deposition shall then be signed by the deponent certifying that the deposition is a true record of the deponent's testimony . . . ."

Our appellate courts have not addressed the question of what use a party may make at trial of deposition testimony that was amended through an errata sheet. Rule 30 (e) (1) of the Federal Rules of Civil Procedure, which contains similar language to Practice Book § 13-30 (d), provides in relevant part: "On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which: (A) to review the transcript or recording; and (B) if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them." Given the similarity in language and the absence of appellate authority interpreting Practice Book § 13-30 (d), we look to cases construing the federal rule for guidance. See *Artie's Auto Body, Inc.* v. *Hartford Fire Ins. Co.*, 287 Conn. 208, 214–15, 947 A.2d 320 (2008).

The United States Court of Appeals for the Second Circuit has stated that "when a party amends his testimony under [r]ule 30 (e), [t]he original answer to the deposition questions will remain part of the record and can be read at the trial. . . . Nothing in the language of [r]ule 30 (e) requires or implies that the original answers are to be stricken when changes are made. . . . This court has recognized that because [a]ny out-of-court statement by a party is an admission, a deponent's original answer should [be] admitted [into evidence] even when he amends his deposition testimony—with the deponent [o]f course . . . free to introduce the amended answer and explain the reasons for the change." (Citations omitted; internal quotation marks omitted.) *Podell* v. *Citicorp Diners Club, Inc.*, 112 F.3d 98, 103 (2d Cir. 1997); see also *Maynard* v. *Stonington Community Center*, United States District Court, Docket No. 3:15cv483 (RNC) (D. Conn. May 17, 2016) (explaining that changes to the form and substance of plaintiff's deposition testimony "will not have the effect of replacing or deleting any of her deposition testimony . . . [r]ather, her changed answers become

part of the record generated during discovery" (citations omitted; internal quotation marks omitted)).

The Second Circuit in *Podell* v. *Citicorp Diners Club, Inc.*, supra, 112 F.3d 103, cited *Lugtig* v. *Thomas*, 89 F.R.D. 639 (N.D. Ill. 1981), in which the United States District Court for the Northern District of Illinois explained the policy reason underlying the conclusion that the original deposition answers must remain. It stated: "The witness who changes his testimony on a material matter between the giving of his deposition and his appearance at trial may be impeached by his former answers, and the cross-examiner and the jury are likely to be keenly interested in the reasons he changed his testimony. There is no apparent reason why the witness who changes his mind between the giving of the deposition and its transcription should stand in any better case. . . . The rule is less likely to be abused if the deponent knows that all the circumstances the original answers as well as the changes and the reasons will be subject to examination by the trier of fact." (Citation omitted.) *Lugtig* v. *Thomas*, supra, 642.

Several trial courts also have endorsed this federal interpretation. See, e.g., *Elisea* v. *CFC Stillwater, LLC*, Superior Court, judicial district of New Haven, Docket No. CV-14-6044056-S (September 15, 2015) (61 Conn. L. Rptr. 162, 168) (finding court's reasoning in *Lugtig* instructive on use of original deposition answers and use of changes made and, in denying motion to suppress errata sheet, stating that "[t]he original answers to the deposition questions, the changes and reasons for same, shall remain a part of the record"); *Bonner* v. *New Haven*, Superior Court, judicial district of New Haven, Docket No. CV-11-6025382-S (February 21, 2014) (relying on *Podell* to conclude that "when a party amends deposition testimony, the court may consider both the revised responses in the errata sheet and the original responses for evidentiary purposes" and considering both original deposition responses and amended errata responses in determining that there existed genuine issue of material fact precluding summary judgment).

We also interpret Practice Book § 13-30 (d) in accordance with the Second Circuit's elucidation of rule 30 (e) of the Federal Rules of Civil Procedure and hold that original deposition responses are admissible notwithstanding amended answers on an errata sheet. In the present case, the court sustained the plaintiff's objection to the offer of the plaintiff's original deposition testimony "unless the errata sheet is incorporated." Thus, the court precluded the defendant from admitting into evidence the original response. The court should have entered the original response into evidence and, if the plaintiff sought to do so, permitted the plaintiff to "introduce the amended answer and explain the reasons for the change." (Internal quotation marks omitted.) *Podell* v. *Citicorp Diners Club, Inc.*, supra, 112 F.3d

103. Accordingly, the court improperly sustained the plaintiff's objection to the admission of the original deposition responses.

III

We next address, as an issue likely to arise on remand, the defendant's claim that "the trial court erred in ruling that any e-mail from any defendant employee—even the plaintiff's union advocates—constituted an admission of a party opponent." We agree with the defendant.

The following procedural history is relevant to this claim. On March 7, 2018, during the plaintiff's testimony, the plaintiff's counsel sought to admit into evidence e-mails among the plaintiff, two union delegates, Donna Stoll and Paul Cummings, and others. The defendant's counsel objected on the basis that the e-mails contained hearsay, and the plaintiff's counsel responded: "That's fine, Your Honor, because . . . Cummings and . . . Stoll . . . are going to testify. . . . So we'll—to the extent that there's something that needs to come in from them, will be heard from them." Despite that response, the trial court stated that the e-mails may be admissible "given the broadening of our Code of Evidence," and directed the plaintiff's counsel to ask the plaintiff to identify Stoll and Cummings. The following colloquy then occurred:

"[The Plaintiff's Counsel]: So who is Donna Stoll?

"[The Plaintiff]: She's a union delegate.

"The Court: What?

"[The Plaintiff]: Union delegate.

"The Court: Yeah. But employed by the union or employed by—

"[The Plaintiff]: By the state.

"The Court: Anywhere particular to your department?

"[The Plaintiff]: She worked for the Department of Mental Health and Addiction Services at SMHA so, yes.

"The Court: Thank you. Okay.

"[The Plaintiff's Counsel]: And she also—did she work on your unit?

"[The Plaintiff]: The scheduler's office was in the back on the unit in 361 in the Resource Room.

"[The Plaintiff's Counsel]: All right. And who is Paul Cummings?

"[The Plaintiff]: Paul Cummings is also a union delegate.

"The Court: And an employee?

"[The Plaintiff]: Same place.

"The Court: Okay. All right. The objection on hearsay is overruled. So one—4 is [a] full exhibit." Exhibit 4

contained Stoll's and Cummings' responses to the plaintiff's communication regarding a "continued scent noted on" a coworker. Cummings, who testified that he was employed by the defendant as a psychiatric social worker and later a community clinician, responded to the plaintiff's e-mail thread by stating: "I believe BCP is designated as scent free and staff should adhere to this every day."

During the direct examination of Stoll on March 20, 2018, the plaintiff's counsel asked whether she was aware of instances of employees wearing scents intentionally. Stoll responded by recounting an occasion in which a staff member approached Stoll needing her assistance in a union matter. When Stoll met with the staff member, she was wearing a fragrance, which Stoll described as "quite strong," and the staff member told Stoll: "I just put some perfume on. I hope it doesn't bother you." The defendant's counsel objected to the testimony on the basis that it constituted hearsay, and the court responded: "No. It's a party opponent under the rules." The defendant's counsel stated: "We don't know who it was." Subsequently, Stoll testified that the staff member was Maureen Crooker, a mental health assistant at SMHA.

The defendant's counsel then stated: "I'd like to renew my motion to strike since we now know that it was a union member who wore the fragrance rather than a member of management. So I don't believe it would be [an] admission of a party or conduct of a party." The court overruled the objection, stating: "It is a state employee; union member, management member. That distinction that you [are] raising has been abolished with the 2018 version of the Code of Evidence. We went through this weeks ago and my rulings have been based on the now-effective Code of Evidence which expands greatly, almost similar to the federal rules if not exactly, the rules for statements of a party opponent. The old Connecticut rule is no longer with us. So your renewed objection, as was the prior objection, is overruled because it just isn't—it is hearsay but it is the exception to the hearsay rule of a statement of a party opponent. The party being the state of Connecticut and an employee of the state of Connecticut." The court then told the defendant's counsel: "You know, no more renewals. My ruling is final on this question."

On appeal, the defendant argues that the court improperly concluded that certain statements of the defendant's employees were admissible against the defendant as admissions of a party opponent. We agree with the defendant.

We first set forth relevant legal principles and our standard of review. Section 8-3 (1) (D) of the Connecticut Code of Evidence provides that "a statement by the party's agent, servant or employee, concerning a matter within the scope of the agency or employment,

and made during the existence of the relationship" is not excluded by the hearsay rule. Section 8-3 (1) further provides that "[t]he hearsay statement itself may not be considered to establish . . . the existence or scope of the relationship under (D) . . . ." The commentary to § 8-3 (1) (D) of the Connecticut Code of Evidence states that subdivision (D), which was amended effective February 1, 2018, "encompasses the exception set forth in rule 801 (d) (2) (D) of the Federal Rules of Evidence and adopted in a majority of state jurisdictions."[18]Under rule 801 (d) (2) (D) of the Federal Rules of Evidence, in order for evidence to be admissible, "the proponent of the evidence must establish (1) the existence of the agency relationship, (2) that the statement was made during the course of the relationship, and (3) that it relates to a matter within the scope of the agency." (Internal quotation marks omitted.) *Crigger* v. *Fahnestock & Co.*, 443 F.3d 230, 238 (2d Cir. 2006). "To the extent [that] a trial court's admission of evidence is based on an interpretation of the [Connecticut] Code of Evidence, our standard of review is plenary. For example, whether a challenged statement properly may be classified as hearsay and whether a hearsay exception properly is identified are legal questions demanding plenary review." (Internal quotation marks omitted.) *Customers Bank* v. *Tomonto Industries, LLC*, 156 Conn. App. 441, 445, 112 A.3d 853 (2015).

In the present case, the trial court issued a blanket ruling that statements made by "a state employee, union member, [or] management member" were admissible pursuant to § 8-3 (1) (D) of the Connecticut Code of Evidence, without conducting the analysis required to determine whether the statement related to a matter within the scope of the declarant's employment. Indeed, the plaintiff failed to establish that Crooker's statement to Stoll "concern[ed] a matter within the scope of the agency or employment." See Conn. Code Evid. § 8-3 (1) (D); see also *Henderson* v. *General Electric Co.*, 469 F. Supp. 2d 2, 11 (D. Conn. 2006) (agents' statements did not satisfy rule 801 (d) (2) (D) of the Federal Rules of Evidence, in that statements did not relate to matter within scope of agency relationship and therefore were inadmissible). Similarly, the court admitted the e-mails authored by Stoll and Cummings, both union delegates, without conducting any analysis as to whether the statements contained within those e-mails concerned a matter within the scope of their employment. Accordingly, the court erred in concluding that all statements made by employees of the defendant, including union delegates, were admissible pursuant to § 8-3 (1) (D) of the Connecticut Code of Evidence.

The judgment, including the award of attorney's fees, is reversed and the case is remanded for a new trial.

In this opinion the other judges concurred.

[1] In addition, the defendant amended its appeal to challenge the court's award of attorney's fees to the plaintiff and includes such claim in its

principal appellate brief. Because we agree with the defendant's first, third, and fourth claims, we reverse the judgment of the trial court, including the award of attorney's fees.

[2] The Commission on Human Rights and Opportunities (commission) was granted permission to file an amicus brief. In its brief, the commission first argued that the court properly found that the defendant failed to accommodate the plaintiff's disability and failed to engage in the interactive process in violation of the act. Next, the commission emphasized that the court, in concluding that the defendant failed to engage in the interactive process in good faith, had "looked, at least in part, to negotiations which occurred once the plaintiff filed her complaint with the commission." The commission then argued that "the confidentiality of the commission's mediation process must be protected for the commission to fulfill its statutory mandate."

[3] In light of our reversal of the judgment of the trial court and remand for a new trial, it is unnecessary for us to address the defendant's second claim and the claims made by the plaintiff in her cross appeal. We address the defendant's third and fourth claims because they are likely to arise on remand.

[4] With respect to the plaintiff's claim of retaliation, she filed a complaint with the commission on June 27, 2014, and received a release of jurisdiction on January 22, 2015.

[5] On January 28, 2014, the defendant filed a motion to dismiss, which was granted in part. Specifically, the trial court, *Cole-Chu*, *J.*, determined that the court lacked jurisdiction over any claims arising prior to October 16, 2011. That ruling is not a subject of this appeal.

[6] On April 21, 2017, the defendant filed a motion for summary judgment, which was denied by the court, *Bates*, *J.*, on October 12, 2017.

[7] Although the motion in limine cited General Statutes § 46a-8, that citation appears to be a typographical error. General Statutes § 46a-83 (d) provides: "Not later than sixty days after the date of sending notice that a complaint has been retained after a case assessment review, the executive director or the executive director's designee shall assign an investigator or commission legal counsel to hold a mandatory mediation conference. A mediation conference may but need not be held if the commission has held a pre-answer conciliation conference. The investigator or commission legal counsel assigned to conduct the mediation shall not be assigned to investigate the complaint. The mandatory mediation conference may not be scheduled for the same time as a fact-finding conference held pursuant to subsection (f) of this section. The mediator may hold additional mediation conferences to accommodate settlement discussions."

[8] The defendant's counsel was unable to find the citation to the statute on which she sought to rely and asked, "[m]ay I switch, Your Honor, since I was incorrect to [refer to] Tait and LaPlante and the Connecticut Supreme Court for authority?" The court responded: "No. You may not."

The court later stated: "As long as we seem to be stopped for the moment, § 4-8 of the 2018 Code of Evidence titled, 'offers to compromise,' evidence of an offer to compromise or settle a disputed claim is inadmissible on the issues of liability and the amount of the claim. It does not require the exclusion of evidence offered for another purpose, such as proving bias or prejudice of a witness, refuting a contention of undue delay, or proving an effort to obstruct. Statements of fact or admissions of liability made by a party are also excluded from the applicability of the rule. So that's—it's 4-8 of the code."

[9] General Statutes § 46a-84 (e) provides: "A human rights referee or attorney who volunteers service pursuant to subdivision (18) of section 46a-54 may supervise settlement endeavors. In employment discrimination cases only, the complainant and respondent, with the permission of the chief referee, may engage in alternate dispute resolution endeavors for not more than three months. The cost of such alternate dispute resolution endeavors shall be borne by the complainant or the respondent, or both, and not by the commission. Any endeavors or negotiations for conciliation, settlement or alternate dispute resolution shall not be received in evidence."

[10] With regard to mediation generally, General Statutes § 52-235d prohibits the disclosure, with certain exceptions, of oral or written communications received or obtained during the course of a mediation, which the statute defines as "a process, or any part of a process, which is not court-ordered, in which a person not affiliated with either party to a lawsuit facilitates communication between such parties and, without deciding the legal issues in dispute or imposing a resolution to the legal issues, which assists the parties in understanding and resolving the legal dispute of the parties." Section 52-235d (c) further provides that "[a]ny disclosure made in violation of any provision of this section shall not be admissible in any proceeding."

[11] The mandatory mediation process is set forth in General Statutes § 46a-83 (d), which provides: "Not later than sixty days after the date of sending notice that a complaint has been retained after a case assessment review,

the executive director or the executive director's designee shall assign an investigator or commission legal counsel to hold a mandatory mediation conference. A mediation conference may but need not be held if the commission has held a pre-answer conciliation conference. The investigator or commission legal counsel assigned to conduct the mediation shall not be assigned to investigate the complaint. The mandatory mediation conference may not be scheduled for the same time as a fact-finding conference held pursuant to subsection (f) of this section. The mediator may hold additional mediation conferences to accommodate settlement discussions."

[12] In order to prevail on a reasonable accommodation claim, a plaintiff is required to show that "(1) he is disabled within the meaning of the [statute], (2) he was able to perform the essential functions of the job with or without a reasonable accommodation, and (3) [the defendant], despite knowing of [the plaintiff's] disability, did not reasonably accommodate it. . . . If the employee has made such a prima facie showing, the burden shifts to the employer to show that such an accommodation would impose an undue hardship on its business." (Internal quotation marks omitted.) *Festa* v. *Board of Education*, 145 Conn. App. 103, 114, 73 A.3d 904, cert. denied, 310 Conn. 934, 79 A.3d 888 (2013). "Once a disabled individual has suggested to his employer a reasonable accommodation, federal law requires, and [our Supreme Court] agree[s], that the employer and the employee engage in an informal, interactive process with the qualified individual with a disability in need of the accommodation . . . [to] identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations. . . . In this effort, the employee must come forward with some suggestion of accommodation, and the employer must make a good faith effort to participate in that discussion." (Citation omitted; internal quotation marks omitted.) *Curry* v. *Allan S. Goodman, Inc.*, 286 Conn. 390, 416, 944 A.2d 925 (2008).

[13] The plaintiff further argues that, "[r]egardless of the correctness of the trial court's ruling enforcing the discovery order, [the] defendant cannot demonstrate harmfulness." In light of our resolution of the claim raised in part I of this opinion, in which we have concluded that the defendant is entitled to a reversal of the judgment and a new trial, it is unnecessary that, in relation to the defendant's third and fourth claims, we undertake an analysis of whether such errors were harmful.

[14] The plaintiff also indicated on the errata sheet "see also page 173:7-8." The testimony on that page relates to a February, 2013 incident in which a coworker came to work after having gone to a hair salon, and the plaintiff experienced a reaction. When asked whether she would have problems when she had gone to the hair salon on her own during that time, the plaintiff responded: "I was not going to the hairdressers back then."

[15] We are not persuaded by the plaintiff's argument that "because [the] defendant chose to accept the changes made to the errata sheet, [the] plaintiff's prior testimony was not admissible." The defendant's pleading, in which it "accepted" the changes, merely provided the court with notice that it would proceed on its pending motion for summary judgment rather than notice a new deposition to address the amendments.

[16] The defendant's counsel also cited the commentary to § 8-3 (1) (A) of the Connecticut Code of Evidence, which provides in relevant part: "If the statement at issue was made by a party opponent in a deposition, the statement is admissible in accordance with Practice Book § 13-31 (a) (3). That provision permits an adverse party to use at trial, for any purpose, the deposition of a party . . . . This rule of practice was deemed 'analogous' to the hearsay exception covered by Section 8-3 (1) in *Gateway Co.* v. *DiNoia*, 232 Conn. 223, 238 n.11, 654 A.2d 342 (1995) (construing Practice Book [1978–97] § 248 [1] [c], predecessor to Practice Book § 13-31 [a] [3])."

[17] The defendant's counsel asked the plaintiff: "Ma'am, at your deposition on April 7, 2017, do you recall being asked, do you color your hair, and your response was, on occasion. Then you were asked, do you ever have your hair permed, and you said, on—I had on occasion. And then you were asked, when's the last time you had your hair permed. You said, months ago. Then you were asked, question: Okay. Between 2010 and 2014, did you ever have your hair permed? Yes."

[18] The commentary to § 8-3 (1) (D) of the Connecticut Code of Evidence also provides: "The notes of the advisory committee on the 1972 proposed rules express '[d]issatisfaction' with the traditional rule requiring proof that the agent had actual authority to make the offered statement on behalf of the principal. The advisory committee notes cite to '[a] substantial trend [that] favors admitting statements related to a matter within the scope of

the agency or employment. *Grayson* v. *Williams*, 256 F.2d 61 [66] (10th Cir. 1958); [see also *Koninklijke Luchtvaart Maatschappij N.V. KLM Royal Dutch Airlines Holland*] v. *Tuller*, [292 F.2d 775, 783–84 (D.C. Cir.), cert. denied, 368 U.S. 921, 82 S. Ct. 243, 7 L. Ed. 2d 136] (1961); *Martin* v. [*Savage Truck Line, Inc.*], 121 F. Supp. 417 [418–19] (D.D.C. 1954), and numerous state court decisions collected in 4 [J. Wigmore, Evidence (4th Ed. 1972) § 1078, pp. 166–69 n.2] . . . .' Fed. R. Evid. 801 (d) (2) (D), advisory committee notes. This trend has continued since then. See, e.g., *B & K Rentals & Sales Co.* v. *Universal Leaf Tobacco Co.*, 324 Md. 147, 158, 596 A.2d 640 (1991) (adopting federal approach and observing that '[t]he authorities, both courts and commentators, have almost universally condemned the strict [common-law] rule in favor of the . . . rule set forth in [rule 801 (d) (2) (D) of the Federal Rules of Evidence]'). Connecticut now adopts the modern rule as well, and, in doing so, overrules the line of cases adhering to the common law in requiring proof that the declarant was authorized to speak on behalf of the employer or principal. See, e.g., *Cascella* v. *Jay James Camera Shop, Inc.*, 147 Conn. 337, 341, 160 A.2d 899 (1960); *Wade* v. *Yale University*, 129 Conn. 615, 617–18, 30 A.2d 545 (1943)."

---